UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-cr-86 |
| | ) | (Phillips) |
| JOHN OLIVER THREADGILL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND
ORDER**

This matter is before the Court on Defendant's Motion for Judgment of Acquittal or New Trial. [Doc. 42]. Count One of the one-count indictment charged the Defendant, John Oliver Threadgill, with violating Title 26 U.S.C. § 7201 of the Internal Revenue Code by willfully attempting to evade and defeat the payment of $1,427,176 in income tax owed to the United States for the years 1985, 1986, 1987, 1988, 1995, 1996, 1998, 1999, 2000, 2002, 2003 and 2004, by failing to pay to the Internal Revenue Service said income tax, as required by law, and by committing the following affirmative acts of evasion:

 (1) Using his law firm bank account and payroll account to issue checks to third parties for personal expenditures, thus disguising the existence and source of funds available to pay his assessed personal income taxes and thwarting attempts to collect such taxes;

 (2) Creating and maintaining ledgers that concealed the true nature of personal expenditures from his law firm account;

 (3) Establishing bank accounts in the names of nominee trusts and using such accounts to disguise the existence of assets, thus thwarting attempts to collect his personal income taxes; and,

1

(4) Titling his personal residences in the names of nominee trusts in an attempt to disguise the ownership of such residences and place them beyond the reach of creditors, including the Internal Revenue Service.

At the close of the Government's case-in-chief, Defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The Court denied the Defendant's Motion, and on November 6, 2012, a jury returned a guilty verdict.

Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution, the Defendant moves for a judgment of acquittal, or, in the alternative, for a new trial. On January 9, 2013, the Government filed its response. [Doc. 46]. For the following reasons, Defendant's Motion for Judgment of Acquittal or New Trial [Doc. 42] is **DENIED**.

## I. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

As the Court of Appeals for the Sixth Circuit has stated, "[a] Rule 29 motion is a challenge to the sufficiency of the evidence." United State v. James, 496 F.3d 541, 550 (6th Cir. 2012) (quotations and citation omitted). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]his court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not remove every reasonable hypothesis except that of guilt." United States v. Jones, 102 F.3d 804, 807 (6th Cir. 1996) (internal quotation marks omitted). "This standard applies regardless whether direct or circumstantial evidence

supports the conviction. In addition, this Court must draw reasonable inferences from the evidence in the government's favor." United States v. Pollard, 778 F.2d 1177, 1180 (6th Cir. 1985).

## II. ANALYSIS

### A. Defendant's Motion for Judgment of Acquittal is Denied

#### 1. The Evidence Was Sufficient to Support a Finding that the Defendant Acted Willfully.

The Defendant divides his Motion into four subcategories; however, each separate heading is actually a reiteration of just one central argument. The central argument presented in the Motion is that no rational trier of fact could find that the Defendant acted "willfully," in violation of the statute, based upon the evidence offered at trial. The Defendant writes,

> As the defense emphasized at trial, much of this case was not disputed. There was no dispute that Threadgill owed taxes, that he did not pay all the taxes, that he spent money on himself out of law firm account and trust accounts, or that he placed real property into the name of family trusts. The question, however, was whether he took these actions with the intent of avoiding payment (or collection) of the outstanding taxes, or whether he did it with some other intention.

[Doc. 43 at 6]. The Defendant proceeds to analyzes each of the four charged affirmative acts of evasion, but offers the same critique against each; specifically, that the evidence presented at trial could not lead a rational juror to conclude that the Defendant *acted willfully* in violation of 26 U.S.C. § 7201.

Ordinarily, there is no way that a defendant's state of mind can be directly proven, because no one can read another person's mind and tell what that person is thinking. But a

defendant's state of mind can be proved indirectly from the surrounding circumstances. This includes facts like what the Defendant said, what the Defendant did, how the Defendant acted, and any other facts or circumstances in evidence that show what was in the Defendant's mind. By way of illustration only, willfulness may be inferred from conduct such as filing false documents, concealing assets, utilizing a nominee entity to create the appearance that the Defendant has relinquished ownership and control over assets, and any conduct the likely effect of which would be to mislead or to conceal.

In this case, the Government presented evidence that the Defendant knowingly conveyed property and established bank accounts with the use of nominee trusts. The Government presented evidence that the Defendant participated in pretextual conveyances in order to minimize his personal wealth, which would, presumably, enable the Defendant to escape his assessed tax obligations. Put more simply, the Government offered evidence that the relevant trusts and property transfers lacked economic substance. The Government also offered evidence that Mr. Threadgill unlawfully comingled and misrepresented his personal and business expenses. Though largely redundant, the Court will follow the format of the Defendant's Motion and address each affirmative act directly.

    a. **First Affirmative Act:** Using his law firm bank account and payroll account to issue checks to third parties for personal expenditures, thus disguising the existence and source of funds available to pay his assessed personal income taxes and thwarting attempts to collect such taxes;

The Defendant concedes that he used money from his law firm bank account to pay for personal items [Doc. 43 at 7]; however, the Defendant argues that "there was no direct evidence that this was done to 'disguise the existence and source of funds available'." *Id* at 7-8.

The Defendant continues, "The Government produced no evidence…that in the years prior to Revenue Officer Lethco's actions in 2005, the IRS did anything to collect its taxes other than periodically mail Threadgill notices of his balance and file tax liens at the courthouse." *Id* at 6-7.

The Defendant confuses the applicable legal standard. To be in violation of the charged offense, the Government must prove beyond a reasonable doubt that the Defendant willfully sought to avoid payment of his assessed personal income taxes. The extent to which the IRS attempted to collect those taxes is not directly relevant to the elements of the offense charged. In other words, even if the IRS only sent the occasional letter indicating delinquency, the Defendant would still be in violation of the statute if he attempted to avoid his assessed payment.

One way of avoiding payment of one's assessed personal income taxes is to disguise the existence or source of one's income. One way to disguise the existence or source of one's income is to funnel personal expenditures through a business account, thereby maintaining a lifestyle asymmetrical to actual *personal* income. The Defendant admitted at trial, and in his Motion, that he used his firm bank account to pay for personal items. Therefore, the relevant inquiry is not what the IRS did or did not do to collect taxes, but *why* Mr. Threadgill paid for personal items with his business accounts. A rational juror could conclude that given Mr. Threadgill's training as a lawyer, his awareness of IRS collection efforts, and his comparatively low and repeated offers of compromise settlements—the legitimacy of which was called into question during trial—that the Defendant was aware of his tax obligation, as well as possible methods to thwart collection efforts. The evidence is sufficiently present such that a rational juror could further conclude that notwithstanding his tax obligation, Mr.

Threadgill continued to support his desired lifestyle by using firm money to pay for personal expenditures—which would also limit his exposure to collection efforts by maintaining a comparatively low balance in his personal bank accounts[1]. A reasonable juror could conclude that all of this was done in order to defeat the payment of $1,427,176 of personal income tax owed to the United States, in violation of 26 U.S.C. § 7201.

      **b. Second Affirmative Act:** Creating and maintaining ledgers that concealed the true nature of personal expenditures from his law firm account;

At trial, the Government produced evidence that Mr. Threadgill kept ledgers that did not properly describe the nature of his spending. For example, Mr. Threadgill provided to his accountants a ledger entitled "cafeteria plan," but expenses inserted in the cafeteria plan section included private school tuition. The Defendant writes, when discussing the cafeteria plan ledger, that Mr. Threadgill's "characterization may not have been perfectly accurate…" [Doc. 43 at footnote 4].

The Defendant then argues that "there was no evidence at trial that Threadgill created any ledger that concealed the true nature of [his] personal expenditures." [Doc. 43 at 8]. However, the very next sentence reads, "To be sure, he did create ledgers, but those were then used [for a legitimate purpose]…. The evidence, in short, was that the ledgers had exactly the opposite purpose than that ascribed to them by the Government." The Defendant appears to accept that

---

[1] If the Defendant were being charged with evasion of assessment, the Defendant's argument that the evidence is insufficient—or unduly speculative—would be stronger; however, since he is being charged with failure to pay, the Defendant's argument fails to appeal to the proper legal standard. More simply, to be found guilty under §7201, the Government must prove three elements, and one of the elements, the existence of a debt, is admitted by the Defendant; consequently, the Government need only prove the remaining two elements, that is, that Mr. Threadgill 2) willfully 3) evaded his tax obligations. Dissected in this manner, one can see that the extent to which the IRS attempted to collect the debt is irrelevant as to willfulness, as long as Mr. Threadgill was aware of an outstanding tax obligation (one cannot willfully avoid that which one is unaware of.).

"cafeteria plan" was an inaccurate characterization, yet later argues that Mr. Threadgill did not create a ledger that "concealed the true nature of [his] personal expenditures." *Id.* The difference between the word "conceal" and words "inaccurate characterization" that the Defendant is presumably highlighting is that an inaccurate characterization may be either intentional or unintentional—willful or accidental—whereas "concealment" requires that one willfully, or purposefully, misrepresented some fact or other.

The Court agrees with the Defendant; the ledger "cafeteria plan" was not "perfectly accurate." The Government produced evidence, both documentary evidence of the ledger itself, as well as testimony from Ms. Bjorkman and Ms. Jackson, that "cafeteria plan" was used as a heading to describe financial conduct that was wholly separate from the ordinary meaning of that term. Undoubtedly, paying private school tuition is perfectly lawful, and, when consulting one's accountant, should be documented as an expenditure of some kind. It is undisputed that when Mr. Threadgill prepared his financial documents, which were to be handed over to his accountants, he placed private school tuition in the wrong category of expenditures; in fact, he placed it in a category of expenditures that traditionally refers to business expenses.

The Defense argued at trial, and in the present Motion, that this action was a harmless mistake since "[the accountatns] included (with Threadgill's knowledge) the cafeteria plan as compensation to Threadgill." *Id* at 9. On the other hand, the Government argued that the misrepresentation was part of a broader plan to disguise personal expenditures as business expenditures in order to avoid the *payment* of taxes. A rational juror could believe either narrative; and for the purposes of this motion—drawing all reasonable inferences in the Government's favor—the jury sided with the Government in the belief that the Defendants conduct was not harmless error. Such a conclusion is rational based upon the evidence presented

at trial and discussed herein. The Defendant's argument that "there was no evidence at trial that Threadgill created any ledger that concealed the true nature of [his] personal expenditures," is without merit because the Defendant admits that he inaccurately characterized his expenditures. The only dispute is why he mischaracterized his expenditures; i.e., whether the mischaracterization was intentional or accidental. The jury, by returning a guilty verdict, determined that the mischaracterization was more akin to concealment than accident—exercising their exclusive province as fact finders. The Court finds no reason to question their judgment and ample evidence to uphold it.

> c. **Third Affirmative Act:** Establishing bank accounts in the names of nominee trusts and using such accounts to disguise the existence of assets, thus thwarting attempts to collect his personal income taxes;

The Defendant admits that he established bank accounts in the name of trusts, but argues that "…any supposition that [Mr. Threadgill] was trying to thwart attempts to collect is impermissible guesswork." [Doc. 43 at 9]. Here, the Defendant has not presented an argument, just an assertion; consequently, the Court is left to consider whether sufficient evidence was presented to the jury such that a rational juror could have found that the bank accounts established in the name of nominee trusts were illegitimate. On this point, the Court finds the Government's rational persuasive; the Government writes,

> Threadgill's prior contacts with the IRS, the manner in which the property was acquired, and its transfer shortly after the visit from Ms. Lethco, were plainly sufficient to serve as circumstantial proof that the motivating factor of the defendant was tax evasion.

[Doc. 46 at 10]. While the Court does not find that the factors mentioned above *establish* that the Defendant was guilty of tax evasion, the Court does find that a rational juror *could find* that the

transfer of property to nominee trusts, in conjunction with the other factors mentioned by the Government, evidence an intent to commit tax evasion.

> **d. Fourth Affirmative Act:** Titling his personal residences in the names of nominee trusts in an attempt to disguise the ownership of such residences and place them beyond the reach of creditors, including the Internal Revenue Service.

The Defendant acknowledges that "Threadgill did place two properties in the name of trusts;" however, he argues that since the property, by record of conveyance, was "explicitly tied to Threadgill," a rational juror could not conclude that the conveyance was an attempt to deceive the IRS. [Doc. 43 at 9]. As was mentioned *supra* at Footnote 1, the Defendant's argument addresses the wrong legal standard. If the Defendant was charged with engaging in misleading acts in order to avoid the *assessment* of taxes, the Defendant's argument that his transfer was plainly traceable through the chain of title would be relevant; however, since the Defendant is charged with failure to *pay* his *already assessed* income tax obligation, the Defendant's argument stressing the traceability of title is irrelevant. Additionally, it stands to reason that it is only because the Defendant's property was assessable that the IRS could estimate his tax liability and the present action could be brought for failure to pay. If, on the other hand, the Defendant's activities were undiscoverable,[2] the present action would not exist.

---

[2] The Defendant erroneously argues, by implication, that the Government's position is that Mr. Threadgill's activities were undiscoverable, or, at least, difficult to discover; however, the Government does not need to, nor does it, take such a position because the extent to which Mr. Threadgill was successful in hiding his assets is wholly irrelevant to the charged offense. The Defendant's argument would be applicable, however, if the Defendant was charged with avoiding the assessment of taxes, but he is not. Put another way, in order to sustain the verdict, the Government need only have offered evidence that the Defendant engaged in some affirmative act of evasion. Whether the alleged scheme was successful, complicated or clumsy is immaterial; all that matters is that it happened.

In any event, it is simply not relevant whether the Defendant's transfers were detectable through chain of title.

The subsequent question is whether a rational juror could have concluded that by placing assets into nominee trusts, the Defendant was attempting to evade or defeat the payment of personal income taxes. The Court finds that a rational juror, based upon the circumstances of this case, could have found that the Defendant was attempting to avoid the payment of *already assessed* income taxes. For example, the Government introduced evidence that Mr. Threadgill used money from his law firm account to purchase a lot on Captain's Way. Next, the Captain's Way property was placed, by title, into an entity called the ELM Family Educational Trust. After the property was sold, the money from the sale was used for personal expenditures, verifying (according to the Government) that the purchase was a personal expenditure, illegitimately labeled as a business expenditure. The funds, which could have been used to pay Mr. Threadgill's income tax obligation, were instead funneled to the ELM Family Educational Trust and the ELM Family Trust. A rational juror could see the above-mentioned trusts as examples of a broader scheme to disguise the Defendant's ability to pay his *already assessed* tax obligations.

### 2. Statute of Limitations

Finally, the Defendant writes that "under the applicable statute of limitation, the Government was required to prove that at least on affirmative act occurred within six years of the indictment in June 2011. Therefore, even if the Court were to conclude that Threadgill did in

fact commit tax evasion prior to June 2005, but not after June 2005, then an acquittal is required." [Doc. 43 at 11]. The Defendant's argument is perplexing. Firstly, the Court will not "conclude [whether] Threadgill did in fact commit tax evasion." The Court's role is merely to determine whether there was sufficient evidence to support the jury's finding of guilt. Secondly, the Court does not determine whether the Defendant committed some act of evasion after June 2005, again, that is the role of the jury. Before the Jury retired to deliberate, the Court instructed the Jury as follows:

> In addition to proving each element of the Indictment, the Government must also prove that Mr. Threadgill committed some affirmative act within the statute of limitations. The statute of limitations for tax offenses is six years. In the case of tax evasion, which is the offense charged here, the running of the statute is triggered by the last affirmative act of evasion in furtherance of the crime.
>
> This means that since the Indictment was issued on June 21, 2011 against Mr. Threadgill, the Government has the burden to prove that Mr. Threadgill committed at least one affirmative act in furtherance of evasion after June 21, 2005 and, all twelve jurors must be in agreement as to what that act or acts were.
>
> If the evidence in the case leave you with a reasonable doubt as to whether Mr. Threadgill committed at least one affirmative act after June 21, 2005, then you must acquit Mr. Threadgill of this charge.

[Jury Instruction, *United States v. Threadgill,* 3:11-cr-86]. The Court finds that the Jury was properly instructed as to the applicable statute of limitations, and further affirms that it is the role of the jury, not the Court, to determine if the evidence presented at trial is true. The Court presumes that the jury followed its instructions, and returned its verdict after considering all of the facts presented. Additionally, the Defendant did not object to the statute of limitations instruction at any time.

For the aforementioned reasons, the Defendant's Motion for a Judgment of Acquittal is **DENIED.**

### A. Defendant's Motion for a New Trial is Denied

Rule 33 of the Federal Rules of Criminal Procedure provides that "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial should be granted only "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (internal quotation marks and citation omitted). When considering a motion for a new trial, the district court "may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.* at 593. The Sixth Circuit has not "squarely addressed whether a district court may consider evidence not presented at trial when evaluating a Rule 33 motion." *United States v. Lewis,* 2013 U.S. App. LEXIS 7692 (6th Cir. Ohio 2013)

Here, the evidence does not preponderate against the verdict. The Court finds that the evidence submitted at trial was sufficient to support the jury's verdict. The Court is to only grant a new trial in "extraordinary circumstances," and the Court finds that the instant case is not extraordinary in any manner that would demand and/or require a new trial; consequently, the Defendant's Motion for a New Trial is **DENIED.**

## III. CONCLUSION

For the Aforementioned reasons the Defendant's motion for a Judgment of Acquittal or New Trial [Doc. 42] is **DENIED.**

**IT IS SO ORDERED.**

                              **ENTER:**

                                                      <u>    s/ Thomas W. Phillips    </u>
                                                          United States District Judge